POWER, SECRETARY OF STATE, *et al.* v. ROBERTSON, STATE REVENUE AGENT.

[93 South. 769, En Banc. No. 23128.]

1. STATUTES. *Elector has right to challenge sufficiency of petition for election under the Initiative and Referendum Amendment.*

Chapter 159, Laws 1916, known as the Initiative and Referendum Amendment, if valid, confers on the secretary of state the power to decide all questions of fact affecting the sufficiency and validity of the petitions therein provided for, which power is *quasi*-judicial, and any elector of the state has a right to challenge or contest the sufficiency

and legality of the petition and to produce evidence to sustain his challenge. *Ferguson* v. *Monroe County,* 71 Miss. 524, 14 So. 81, and other cases cited.

2. CERTIORARI. *Circuit court had jurisdiction to review action of secretary of state in passing on sufficiency of initiative and referendum petition.*
Under section 156 of the state Constitution of 1890, giving the circuit court jurisdiction of all matters not exclusively vested in some other court, and such appellate, jurisdiction as may be conferred by law, and section 702, Code 1906 (Hemingway's Code, section 481), giving such court jurisdiction of all matters and things not vested exclusively in some other court, and under sections 90 and 91, Code 1906 (sections 72 and 73, Hemingway's Code), providing for *certiorari* to review the decisions of all tribunals inferior to the circuit court, the circuit court has jurisdiction to review by *certiorari* the action of the secretary of state in reference to the sufficiency and legality of a petition under the Initiative and Referendum Amendment (chapter 159, Laws 1916). *Ferguson* v. *Monroe County,* 71 Miss. 524, 14 So. 81, and other cases cited.

3. CONSTITUTIONAL LAW. *Initiative and Referendum Amendment held unconstitutional, because not separately submitting separate subjects.*
Section 33 of the Constitution of 1890 delegates the legislative power to the legislature, composed of a Senate and a House of Representatives. Section 273 of the Constitution of 1890 deals with the amending of the Constitution, and provides, among other things, that, when more than one amendment shall be submitted at one time, they shall be submitted in such manner and form that the people may vote for or against each amendment separately. These sections deal with separate matters, and chapter 159, Laws 1916, violates section 273, because such act deals with several separate subjects, and was not submitted in such form as each might be voted on separately. *State* v. *Brantley,* 113 Miss. 786, 74 So. 662, Ann. Cas., 1917E, 723, overruled.

SMITH, C. J., dissenting.

APPEAL from circuit court of Hinds county.

HON. WILEY H. POTTER, Judge.

Petition for *certiorari* by Stokes V. Robertson, State Revenue Agent, against Joseph W. Power, Secretary of State, and others, to review initiative and referendum proceedings. There was a judgment prohibiting the secretary of state from ordering an election and vacating his proclamation therefor, and defendants appeal. Affirmed.

*H. Cassedy Holden,* assistant attorney-general for the state.

The Demurrer Was Improperly Overruled. 1. The complaint stated no cause of action. The complaint, petition, or challenge was filed in the lower court by Stokes V. Robertson as a taxpayer and as the incumbent of the office of state revenue agent. In neither capacity was he entitled to the relief sought because at the time of the filing of the complaint he had suffered no injury or damage. *Power* v. *Ratliff,* 112 Miss. 93, 72 So. 864.

The office of appellee is a statutory office, and as such may be regulated or abolished entirely by the people or their legislature. The appellee has no right, civil or political, to this office or any of its emoluments that is paramount to the right and beyond the power of the people to regulate directly or indirectly.

It will doubtless be contended that under section 33 of the constitution as amended, an initiative petition may be challenged in the circuit court by any citizen as a matter of right granted therein expressly or by necessary implication; that the challenger does not have to show that he has been or will be injured or damaged. The basis for such a contention is apparent only and is in reality entirely fallacious.

It is true that amended section 33 provides that: "In the event that sufficiency of the petition is challenged, the question shall be tried at once, in term-time or in vacation and such cause shall be a preference cause over all other causes; and further that in the event of legal proceedings in any court to prevent giving effect to any petition, upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition." Can the conclusion be fairly drawn from these two clauses (and they are the only two in the entire amendment that mention legal proceedings) that the intent was to give any cit-

izen the positive and arbitrary right to institute legal proceedings in the circuit court to prevent an initiative petition from taking effect, regardless of whether or not he was affected in any way as to his property or his political or civil rights? If such had been the intent, it could and would have been easily and clearly stated.

The complaint or petition was ill-advised, premature, devoid of merit in law, and the demurrer thereto should have been sustained on this ground alone. *Power* v. *Ratliff, supra,* and authorities cited therein. *Friendly* v. *Olcott,* 61 Oregon 581.

2. The court was without jurisdiction. Under the common law, there was no procedure or court for the contest of an election. *Quo warranto* proceedings were extant then as now but only to be resorted to for trial of the right to office. By statute of this state the election of county officers may be contested in the circuit court. There is no statutory machinery for contesting the election of state officers or for contesting initiative and referendum elections. However, the validity of measures adopted by initiative and referendum may be questioned in the same manner that legislative enactments are attacked in the courts.

It is plain that the lower court had no power to entertain appellee's complaint by virtue of its common-law jurisdiction. Under the Constitution the circuit court has original jurisdiction "in all matters civil and criminal" not vested by the Constitution in some other court (section 156). By statute, the circuit court has "original jurisdiction in all actions when the principal of the amount in controversy exceeds two hundred dollars, and of all other actions and causes, matters and things arising under the Constitution and laws of this state which are not exclusively cognizable in some other court." Section 702, Code 1906.

When the Constitution and code were adopted in 1890 and 1906 there existed no such thing as the "initiative and referendum." Such an institution was not contemplated

by either the framers of the fundamental law or the stat-
ute-makers.  Construing the two instruments in the light
of the times when they were established, as they must be
construed and interpreted, it is plain that "all matters
civil and criminal" means such causes of action, and
"causes, matters and things arising under the Constitution
and laws of this state" means all actions and causes which
might then arise.  The novel and extraordinary legislative
procedure of initiative and referendum came later in 1915
and was not within the perspective of the Constitution
makers and legislators of 1890 and 1906.  The circuit court,
nor any other court at that time had common-law jurisdic-
tion of election contests.  Such jurisdiction was necessa-
rily conferred by statute and this was limited to elections of
county officers.

Now, the complaint or challenge of the appellee is not
a "civil matter."  A "civil matter," "civil cause," or "civil
suit" is a proceeding in a court of justice by one party
against another for the enforcement or protection of a
private right or for the redress of a private wrong.  The
right to the office, and compensation thereof, of state reve-
nue agent is not a private right, and the regulation or total
abolishment of either is not a private wrong to the appel-
lee.  His complaint is neither an action *ex contractu* nor
*ex delicto*.  It is certainly not a "civil matter" within the
import of the constitutional provisions and statutes defin-
ing jurisdiction.

3. The amendment is not self-executing as to the con-
test of initiative petitions in the courts.  A constitutional
provision is self-executing where no legislation is neces-
sary to give effect to it. 6 R. C. L. page 57, par. 52.  The
question in every case is whether the language of a Con-
stitution is addressed to the courts or the legislature.  *Wil-
lis* v. *Mabon* (Minn.), 16 L. R. A. 281, *State* v. *Kyle* (Mo.),
56 L. R. A. 115.

One of the recognized rules is that a constitutional provi-
sion is not self-executing when it merely lays down general

principles, but that it is self-executing if it supplies a sufficient rule by means of which the right which it grants may be enjoyed and protected, or the duty imposed may be enforced, without the aid of legislation.    In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination of its terms, and there is no language indicating that the subject is referred to the legislature for action.    Note 18 Ann. Cas., 200; *Davis* v. *Burks,* 179 U. S. 399; Notes: 50 L. R. A. (U. S.) 198; Ann. Cas. 1914-C 1116.

Amended section 33 is complete in its provisions for the initiative and referendum process of legislation except the matter of contesting a petition in the courts.  The entire procedure is laid down for filing petitions; the number of signatures required is specified; the qualifications of signers are set forth; all of the details of the petitions are provided for; verification and proof of signatures is described; the duties of the secretary of state are described fully; as to all of these things, and others, the amendment is clearly self-executing.    No statute is needed to give effect to these provisions.

But the matter of a court proceeding is not provided for, no court is designated to try challenges of petitions and no procedure is described to try such a contest.    The amendment is palpably incomplete in this respect; it is not self-executing, to this extent.    In the event that the sufficiency of the petition is challenged, the question shall be tried at once, in term-time or in vacation, and such cause shall be a preference cause over all other causes. . . .    In the event of legal proceedings in any court to prevent giving effect to any petition, upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition.    These are the only words of the amendment that even remotely relate to a court.

In the event that the sufficiency of the petition is challenged—challenged how and where? In the event of legal proceedings in any court. What court, since there was and is no court having jurisdiction of such a matter? Shall it be said that the mere laying down of rules as to preference on a court docket and the burden of proof constitutes the circuit court, or any court, a tribunal to try the contest of a petition? Surely not, but on the other hand it is plain that the amendment contemplates that the legislature will provide by statute for the procedure of a contest and designate the court to try such issues.

The question shall be tried at once—where? In a court to be named by the legislature, if otherwise no court had jurisdiction. This language is addressed to the legislature, not to the courts. It would have been easy to address the courts in plain and unmistakable terms, describing the procedure for contests or petitions and conferring jurisdiction on a certain court.

Amended section 33 was taken almost bodily from the Constitution of Missouri. In that state the legislature has placed an entire chapter in the code in aid of the amendment. Under those statutes the jurisdiction of contests of initiative petitions is expressly conferred upon the circuit court of Cole county. Similarly, in the following states, statutes have been enacted in aid of constitutional amendments almost precisely like our own: Oklahoma, Missouri, Ohio, Colorado and others. The fact that these states have passed aiding statutes clearly indicates that such legislation was contemplated when our own amendment was proposed and adopted and that it is now indispensable especially as to the procedure of contesting the sufficiency of a petition and the jurisdiction to try such a suit. And until such statutes are enacted, there can be no contest of the kind here under review in any court of this state.

4. The election cannot be prevented. It is contrary to the policy of this state, and of all other states, to prevent

or restrain, by judicial writ or other mandate, the holding of an election by the people. *Power* v. *Ratliff*, 112 Miss. 93, 72 So. 864, and cases therein cited and quoted; *Conner* v. *Gray*, 88 Miss. 489, 41 So. 186; 9 R. C. L., page 987, par. 10; *Power* v. *Ratliff, supra; Thompson* v. *Mahoney*, 136 Ill. App. 403; *People* v. *Mills, Sec'y of State* (Col.), 70 Pac. 322; *Dugan* v. *Emporia* (Kan.), 114 Pac. 285.

The same thought is reflected and approved in the statement appearing on page 1011, 9 R. C. L. *Fletcher* v. *Tuttle* (Ill.), 37 N. E. 683.

The rule announced by Justice Terrall in *Gibbs* v. *McIntosh*, 78 Miss. 648, 29 So. 465, is a safe one and will, I submit, be approved and followed in this case: "It is not the policy of this state to have elections, and other political matters of government reserved to legislative discretion, interfered with by the judges and offices of the judicial department of the government."

B. "The Motions to Quash and Vacate Were Improperly Overruled. 1. The secretary of state is not a tribunal inferior to the circuit court. By statute (Section 91, Code of 1906, section 73, Hemingway's Code), *certiorari* lies to "review the judgments of all tribunals inferior to the circuit court," whether an appeal is provided or not. A tribunal is any court, forum, or judicial body. Bouvier's Law Dictionary; Anderson's Law Dictionary. *State* v. *Graves* (Ohio), 107 N. E. 1019; *Peoples* v. *Mills* (Colo.), 70 Pac. 322; Dodd, Revision and Amendment of State Constitutions, page 232.

2. The secretary of state did not act judicially. *Certiorari*, in this state, lies only to review judicial or *quasi*-judicial acts. *Railroad* v. *Adams*, 77 Miss. 777; *Railroad* v. *Adams*, 85 Miss. 772; *Board* v. *Melton*, 123 Miss. 615, 86 So. 369. This is the rule generally. 11 C. J., page 120, par. 67, and notes; *In Re Saline County Subscription* (Mo.), 100 Am. Dec. 338.

Judicial acts are such as are performed by a court touching the rights of persons or property. *Flournoy* v. *City of*

*Jeffersonville* (Ind.), 79 Am. Dec. 468; 5 R. C. L., page 259, par. 10; 11 C. J., page 122; *Railroad Co. v. Adams,* 85 Miss. 772, 38 So. 348; *Railroad* v. *Adams, supra;* 11 C. J. 120; 5 R. C. L. 258; *Board* v. *Melton,* 123 Miss. 623, 624.

The action of the secretary of state in passing upon an initiative petition is no different in principle from the determination of the result of an election. The determination of the result of an election, is ordinarily not subject to review by *certiorari,* on the theory, that it is merely ministerial, although the writ has been held proper in such a case, in New Jersey, Rhode Island, and South Dakota. So other ministerial acts connected with elections are not reviewable by *certiorari,* including the manner of receiving or rejecting votes. 11 C. J., page 124, par. 71.

3. Appellee was not a party entitled to the writ of *certiorari.* 11 C. J., page 135, par. 97; *Power* v. *Ratliff, supra.* Appellee was a mere volunteer or intruder in the proceedings before the secretary of state. He had no more standing as a party thereto than a mere spectator. 11 C. J., pp. 135, 136; 11 C. J., page 137, par. 101, 102. Assuming that the passage of the law should legally injure the appellee, such anticipated injury cannot be prevented by *certiorari.* The remedy for threatened wrong is injunction. 11 C. J., page 90, par. 7.

4. The writ cannot serve to prevent the election. 11 C. J., pages 172, 247; *Power* v. *Ratliff,* 112 Miss. 93.

Conclusion. Unless *Power* v. *Ratliff* is overruled, this case must be reversed and dismissed and the writ of *certiorari* quashed. For there is no difference whatever in substance between the prayer and purpose of the appellee in this case and that of Ratliff, Sullivan and Cade in the former case. Ratliff, Sullivan and Cade ask for a writ of injunction to prevent an election under amended section 33 on the Prohibition Law and the Game Law; they go to the chancery court. Appellee does not go to the chancery court for an injunction to prevent the election under amended section 33, on the proposed measure to reduce his

compensation; he goes to the circuit court and prays for identically the same relief in the form of a writ of *certiorari* with *supersedeas.* Can the courts do by one writ precisely what they cannot do by another? Does a difference in the form or title of the writs entitle Robertson to prevent an election but not entitle Ratliff, Sullivan and Cade to prevent the same kind of an election? Will this court say in one opinion that an election cannot be prevented by injunction, and then say in another that it can be prevented by a writ of *certiorari?* These questions answer themselves. The appellee, in effect, asked for injunctive relief in the circuit court and his prayer was granted despite the clear and sound contrary ruling of this court in *Power* v. *Ratliff.*

But the court below says that it is one thing to restrain an election lawfully called or to be held, and another thing to restrain an unlawful election, and the case of *Conner* v. *Gray,* 88 Miss. 489, 41 So. 186, is relied upon. That case also holds that elections lawfully called and to be held will not be restrained by injunction. But is the election here involved a lawful election? Was it lawfully called?

The secretary of state found the initiative petition to be sufficient. His act was purely ministerial and cannot be reviewed by *certiorari.* Having found the petition sufficient, it was his duty to call the election. But assuming that the proceedings before the secretary of state were reviewable by the lower court, there was no error committed by the secretary of state, and no corruption on his part is charged. He followed precisely the directions of amended section 33. The election was, therefore, legally called and is a lawful election.

But, going further even, and admitting all the allegations in the original complaint or challenge and the petition for *certiorari,* was the election lawfully called and is it a lawful election? Erase from the initiative petition, all of the names admitted to be forgeries, those fraudulently obtained, those not sworn to, those on the counter-pe-

titions, etc., and still there is an initiative petition containing at least several hundred *bona-fide* signatures, properly sworn to, of undisputed qualified electors. This is a sufficient number to lawfully call the election under the provision of paragraph 1 of amended section 33 which is as follows: "The first power reserved by the people is the initiative, and not more than seven thousand five hundred qualified electors shall be required to propose any measure . . . "

The writ of *certiorari* was not the proper remedy because it supersedes a lawful election by the people. The appellee should have asked for a subpoena *duces tecum* which was a plain and adequate remedy and would not have operated to supersede the election. The judgment of the lower court should be reversed, the petition, complaint, or challenge should be dismissed, and the writ of *certiorari* quashed and dismissed.

*D. A. McIntosh* and *Flowers & Brown,* for appellants.

1. As to the constitutionality of the so-called initiative and referendum clause in the constitution, the same being section 33 thereof. We take it that the constitutionality of this amendment is no longer an open question. *State ex rel. Howie, District Attorney* v. *Brantley,* 113 Miss. 786, 74 So. 662; Ann. Cas. 1917E 723. It was there held that the initiative and referendum amendment was properly inserted in the Constitution.

2. Constitutionality of section 33 is not a proper issue in this proceeding. It is to be borne in mind that this is not an attack upon a law that has been enacted by the law-making department of the government. The measure has been proposed but not acted upon. It may never become a law even if submitted to the people and voted on. They may reject it or they may adopt it. The question of the validity of a law will not be passed upon by the courts in advance of its passage. *State ex rel.* v. *Bullard,* 143 Pac.

117; *Hendricks* v. *State*, 79 Miss. 368; *Bell* v. *Carr*, 80 Miss. 177; *Native Lumber Company* v. *Harrison County*, 89 Miss. 171; *Flora* v. *American Express Company*, 92 Miss. 68; *Power, Secretary of State* v. *Ratliff et al.*, 112 Miss. 88, 72 So. 864.

3. The circuit court had no jurisdiction to entertain the so-called "challenge." *Ferguson* v. *Monroe County*, 71 Miss. 524, 14 So. 81; *Gibbs* v. *McIntosh*, 78 Miss. 648, 29 So. 465; *Power* v. *Ratliff*, 112 Miss. 88, 72 So. 864; *Washington Home* v. *Chicago*, 157 Ill. 427; *State ex rel. Datta* v. *Brodigan, Secretary of State*, 138 Pac. 914; *Long* v. *City of Portland*, 53 Ore. 92, 98 Pac. 149; *State ex rel.* v. *Harris*, 74 Ore. 573.

4. Courts Will Not Interfere with Matters Reserved to the Political or Legislative Branch of the Government. *Gibbs* v. *McIntosh*, 78 Miss. 648; Footnote of 20 C. J. 209, from the Texas case of *Dallas* v. *Dallas, C. St. R. Co.*, 105 Texas, 337, 148 S. W. 292; 20 C. J. 209; *Power, Secretary of State* v. *Ratliff et al.*, 112 Miss. 88, 72 So. 864.

5. Effect of Section 156 of the Constitution. It may be argued that the circuit court had jurisdiction to hear this nondescript proceeding by reason of the fact that section 156 of the constitution gives to that court jurisdiction of all matters, civil and criminal, not vested by the constitution, in some other court. But this does not help solve this question. A proceeding of this sort is not warranted in any court. It is not a proper matter for judicial determination.

Section 14 of article six of the constitution of 1869 provided that: "Circuit courts shall have original jurisdiction in all matters civil and criminal in this state; but in civil cases only when the principal amount in controversy exceeds $150. It might well have been said of this section that it was broad enough to give the circuit court jurisdiction of suits at law and equity. An equity proceeding is certainly a "civil matter." Jurisdiction of all matters civil and criminal was by the section referred to, conferred

on the circuit court. Construing this section in *Bell* v. *West Point,* 51 Miss. 262.

6. As Regards the Submitting of Measures by the Secretary of State the Amendment is Self-executing. *Johnson* v. *Rieves,* 112 Miss. 227, 72 So. 925; *Stegens* v. *Benson, Secretary of State,* 91 Pac. 577; Cooley's Const. Lim. (7th Ed.), 121; *In re State Census,* 6 S. D. 540, 62 N. W. 129; *People ex rel.* v. *Rumsey,* 64 Ill. 44.

The judgment of the lower court should be reversed, the proceedings dismissed and the secretary of state directed to proceed with the duties enjoined upon him by law in connection with the submission of this measure to the people at the election to be held November 7, 1922.

*D. W. Houston,* for appellee.

1. Not Less than 7,500 Qualified Electors is a Condition Precedent to Proposing any Measure by Initiative Petitions. The determination of this case depends upon a proper construction of chapter 159 of the Laws of Mississippi, 1916, or section 33 of the constitution of 1890 as amended. This initiative and referendum amendment is a law unto itself and in many respects *sui generis.* It has some parts of the different initiative and referendum amendments of several states; but none of the other states separately have all of the provisions contained in this amendment. Therefore, while the decisions of other courts are on some points helpful in construing this amendment, still none of them are at all conclusive on all or many of the points which arise in this case. In considering this case on every point and in all of its phases, it is necessary to a proper determination thereof to keep in mind always the basic, fundamental idea and fact, that when the legislature passed the said constitutional amendment providing for initiating legislation by a direct vote of the people, and when the people voted upon said constitutional amendment that the legislature provided and the people voted,

that in order to propose any measure by initiative petition that it was absolutely required as a condition precedent and as a jurisdictional matter, that any such initiative petitions should be signed in their own handwriting with their own genuine signature by not less than seven thousand five hundred qualified electors.

We submit that said Robertson strictly followed the course expressly provided for by this very amendment for having this jurisdictional prerequisite passed upon and decided and to test the sufficiency of said petition. He challenged and called into question by petitions, motions, etc., the sufficiency of said petition, both before the secretary of state and before the circuit court of Hinds county.

As to the Powers of the Secretary of State. It may be and is true, as contended by the assistant attorney-general, that the office of secretary of state is created in article 5 of the state constitution which deals with the executive branch of the government, and it is therefore regarded, speaking generally, as an executive office; but section 133 of said article 5, after defining the general duties of the secretary of state says: "He shall perform such other duties as may be required of him by law." While his duties may be and are generally ministerial and administrative, still he may be given judicial or quasi-judicial duties and powers by law, and a fortiori by the constitution; and he has been given at least quasi-judicial powers and duties by this initiative referendum amendment expressly, when it says the "sufficiency of all petitions shall be decided by him, the secretary of state;" and in order to decide this he must necessarily decide whether said petition is signed by seven thousand five hundred qualified electors; and in order to decide whether or not the signers are qualified electors, he must necessarily decide whether the signers have the qualifications described for qualified electors by section 241 of the constitution of 1890, among other things, whether they have resided in this state two years, and one year in the election district (which alone may raise several judicial

questions), and also whether they are "duly registered as
provided in this article," and also whether they have "paid,
on or before the 1st day of February of the year in which
they have offered to vote all taxes which may have been
legally required of them and which they have had an op-
portunity of paying according to law for the two preceding
years (which may also involve several judicial questions) ;
and also whether or not any of them have been convicted
of the crimes named in this section," etc.

Volume 2 of "Words and Phrases," First Edition, page
1899, says: "The decision of a court is its judgment," citing
*Adams* v. *Y. & M. R. R.,* 77 Miss. 194, to 24 So. 317, and that
"a decision is a judgment of the court." Webster's Dic-
tionary defines: "To 'decide' to mean to 'render' judgment."
Standard Dictionary defines the word "decide," as "to
determine the issue; to determine authoritatively; to ad-
judicate; to arbitrate; to give judgment." The assistant at-
torney-general in his brief admits and says: "I am well
aware that it is not the nature of the office that determines
the nature of the act. The act, itself, determines whether or
not it is a judicial act." What are judicial or *quasi*-judicial
acts? Section 68B. of 11th Corpus Juris, pages 121 and 122;
Note 57 on said page 121; Page 122, of said 11th C. J.;
Notes on page 474 of 79 American Decision; *Flourny* v.
*City of Jeffersonville,* par. 10, page 259, of 5 R. C. L.; *Pop-
larville Saw Mill Co.* v. *Marx,* 117 Miss. 10; *Holberg* v.
*Town of Macon,* 55 Miss. 112; *Madison County* v. *Powell,*
75 Miss. 775.

The same principle was held in *Ferguson* v. *Monroe
County,* 71 Miss. 524, 530-535. The court not only said
there, among other things, that "it was the duty of the
board of supervisors to ascertain and determine that the
petition contained the signatures of one-third of the qual-
ified electors of Monroe county, for it is only on such a pe-
tition that an election of the kind petitioned for can be
lawfully ordered, but there must be conformity to the law
in ordering the election provided for, in order to make the

result effective;" but it also decided that, "although the Dramshop chapter did not expressly provide for an appeal from a decision of the board of supervisors ordering an election under section 1610, Code of 1892 to determine as to the sale of intoxicating liquors, that said chapter must be considered along with the entire code of which it was a part; and that under section 79 thereof an appeal to the circuit court from such decision, might be taken by any qualified elector and tax payer;" and we especially call the court's attention to the language used by Judge Campbell on pages 531 and 532 of that case. *Stockton et al.* v. *Caldwell,* 38 So. 369.

2. That Appellee was such a Party as to Entitle Him to The Writ of *Certiorari.* 11th C. J., page 137, Sec. 102-D; *Corbitt* v. *Duncan,* 63 Miss. 85 and 88; *Loeb* v. *Duncan,* 63 Miss. 89; *Rodgers* v. *Hann,* 63 Miss. 578-9; *McCreary* v. *Rhodes,* 63 Miss. 308; *DeBerry* v. *Holly Springs,* 35 Miss. 385 and 388; *Wilson* v. *Wallace,* 64 Miss. 13; *DeBerry* v. *Holly Springs,* 35 Miss. 386-8, page 92; Section 17-D under sub-heading "grounds in particular jurisdictions," said 11th C. J., section 305, Jurisdiction as Sole Ground, 11th C. J., page 103. See, also, under the general heading *"certiorari"* and sub-heading "Jurisdictional Errors," 11th C. J., page 197; *Robinson* v. *Mhoon,* 68 Miss. 712-714, cited in 11th C. J., page 93; Section 24-F. 11 C. J. 98-99; See 11 C. J. 87 and 88; 11th C. J., page 132; Section 96 "D," page 134; See, also, section 105 "D," 11th C. J. 139; Section 74-A, 11th C. J. 126; *Locher* v. *Walsh et al.,* 121 Pac. 712; *Dagley* v. *McIndee,* 176 S. W. 243-4, *State ex rel. Kemper* v. *Carter,* 257 Mo. 100, Cit. 77, 165 S. W. 780. See "The State Constitutions" by Kettleborough. See Revised Statutes Mo. 1909, Vol. 2.

It was on account of these provisions of the constitution and statutes of Missouri that the court in the case of *State ex rel. Kemper* v. *Carter,* 165 S. W. 773, syllabus 4, held that: "When a referendum petition, verified as required by Revised Statutes 1909, section 6749, purporting

to contain the requisite number of names, is presented to the secretary of state, he must file the same, and leave to the courts to determine, in mandamus proceedings, the determination of questions of latent fraud, forgery, and hermetic illegality." *State ex rel.* v. *Olcott,* 62 Ore. 278, which is really the same case on the second appeal as *Friendly* v. *Olcott,* 61 Ore., 580, 123 Pac. 53.

3. That the Circuit Court of Hinds County Had Jurisdiction. I now want to call the court's attention again to the case of *State ex rel.* v. *Olcott,* 62 Ore. 278, quoted from above, on the contention of opposite counsel that the filing of initiative petitions for an election is a legislative act, and not within the jurisdiction of the judicial departments of the government to investigate.

That case clearly decides that question against the contention of opposite counsel. Coming back to the jurisdiction of the circuit court, under our constitution and laws. Section 156 of the constitution of 1890 says: "The circuit court shall have original jurisdiction in all matters, civil and criminal not vested by this constitution in some other court, and such appellate jurisdiction as shall be prescribed by law."

Section 702, Code 1906, says: "The circuit court shall have original jurisdiction in all actions when the principal of the amount in controversy exceeds two hundred dollars and of all other actions and causes, matters and things, arising under the Constitution and laws of this state which are not exclusively cognizable in some other court, and such appellate jurisdiction as prescribed by law."

Certainly, this is an action, cause, matter or thing arising under the constitution and laws of this state. Even if it does not arise under any other law or part of the constitution, it is an action, cause, matter or thing which arises under this amended section 33, of the constitution and the right is given by this very constitutional amendment itself. We respectfully submit that, while the argument of the assistant attorney-general upon this question

is very ingenious, that it is specious and unsound, and that it narrows too much the provisions of said constitutional amendment and of the jurisdiction of the circuit court.

4. That This Amendment is Self-executing as to the Contest of Initiative Petitions in the Courts. The assistant attorney-general cites 6 R. C. L., page 57, par. 52, to the effect that a "constitutional provision is self-executing where no legislation is necessary to give effect to it." We submit that this constitutional provision fully meets this requirement as we have argued somewhat before. In this paragraph 52, just before the quotation made by the assistant attorney-general, there occurs this: "The question has been said to be one of intention in every case." And also this: "It is entirely within the power of those who established and adopted the Constitution to make any of its provisions self-executing." We submit that those who established and adopted this amendment did make the provision for a contest in the court self-executing. One of the general tests laid down by this same authority—this 6 R. C. L., section 55, page 590, on this question is this: "An additional general rule is that when there is no ambiguity, and the principles of the provision would be frustrated unless it should be given immediate effect, it should be treated as self-executing." We submit that there is no ambiguity about this initiative amendment contemplating that there should be a contest in the court; and we further submit that the principles of this provision and right given would be frustrated unless it should be given immediate effect, or if it would be necessary to wait until the legislature saw fit to make other provisions or pass other laws. Again, in section 54, page 58 of this 6 R. C. L. it says: "Minor details, however, may be left for the legislature without impairing the self-executing nature of constitutional provisions."

The assistant attorney-general cites the case of *Wills* v. *Maybon* (Minn.) 1 L R. A. 291, and *State* v. *Kyle* (Mo.),

56 L. R. A. 115, to the effect that: "the question in every case is whether the language of the Constitution is addressed to the court or the legislature. In the first named case the court said: "In every case cited by appellants in which the constitutional provision has been held not self-executing, it will be found, that its language indicated an intention that legislation should be had to carry it into effect and that the nature of the provision itself was such as to render such legislation necessary," neither of these exist in this case. Not only does not the language of the constitutional amendment in this case indicate that any legislation should be had with regard to this right of contest or challenge, or the exercise thereof but its language indicates the contrary. In *Lindsay* v. *Attorney General,* 33 Miss. 508, and 528, the court said: "It is a familiar maxim of the law that wherever there is a legal right, there is also a legal remedy to enforce it." See *Collins* v. *Jackson,* 119 Miss. 727 and 740, 2, 3, 5, and 751 and 753, 4, by Judge Sykes, as to the rule of construing this and other constitutions and statutes. Page 120 of 56 L. R. A.; *State* v. *Kyle.*

5. As to The Election Being Prevented or the Petition Being Prevented from Taking Effect. I have already cited *State ex rel.* v. *Olcott,* 62 Ore. 278, to the effect that the signing and filing of a petition is not a legislative act, and is under the jurisdiction of the court to investigate, but that it is a matter preliminary only to the legislative act, and that it is that and only that, which calls a legislative power into action, etc.

And further, Robertson in this case is merely and only exercising the right given him by this very constitutional amendment itself to challenge the sufficiency of this petition (a matter preliminary to the legislative act or election) and to prevent the taking effect of the petition (and not to prevent the holding of the election) because said petition does not meet the requirements of the law, and because the jurisdictional prerequisite and condition prece-

dent to the placing of the proposed measure upon the ballot, did not exist, and have not been met.

The case of *Powers* v. *Ratliff*, 112 Miss. 93, 72 So. 864, doesn't apply in this case, for several reasons, among others because that was an injunction, where it was absolutely necessary to prove or show to be entitled to such an extraordinary remedy, that the complainants had suffered or would suffer an irreparable injury; and also because and especially because, the sufficiency of the petition in that case was not challenged by either one or both of those complainants, or by any one else, and it was not denied or contended in that case that said petition did not contain the required number of qualified electors. On the contrary, the court in the statement of the case in that case on page 91, especially says: "The record shows that in pursuance of the initiative referendum amendment to the constitution the maximum number of qualified electors petitioned for a reference of the several acts mentioned to a vote of the people."

This is the very question at issue in the instant case. 9th R. C. L., page 987. This constitutional amendment is unconstitutional and void. This brief is already too long and we will not discuss at length this question now, but hope to do so in the oral argument of this case.

However, we respectfully submit that this amendment is unconstitutional, not only upon the grounds and for the reasons insisted upon in the case of *State ex rel.* v. *Brantley*, 113 Miss. 786, et seq., but upon the additional grounds set forth in our amendment to our challenge and petition in the circuit court, as set forth in my statement in this case; I do not want the court to conclude that because I don't fully argue this matter in this brief that I have any less confidence in the fact that this constitutional provision is unconstitutional. The matter has already been fully discussed in the *State* v. *Brantley* case and in the case of the *State* v. *Powell*, 77 Miss. 543, 27 So. 927, and of *State* v. *Jones*, 106 Miss. 522, 64 So. 241, and I will

not further argue same in this brief; but wish to do so in the oral argument. Associate counsel has already discussed this question ably and thoroughly in his brief.

I submit that this case should be affirmed.

*C. D. Potter, Chamers Potter, J. A. Teat, F. C. Hathorn* and *J. W. Cassedy,* for appellee.

We respectfully submit that the alleged initiative and referendum amendment was not properly submitted or adopted and for that reason the same cannot properly be said to be a part of the constitution.   Our grounds for this assertion are these: First, that the amendment did not obtain the required vote; Second, that the amendment contains more than one subject and therefore was submitted to the people in violation of section 273 of the constitution in this, to-wit: (A) Because the provision for the initiation of statutory laws and constitutional amendments are two separate and distinct subjects. (B) Because in addition to providing how constitutional amendments could be initiated or started, the alleged amendment changes the vote required by the people for the adoption of a constitutional amendment started by initiation. (C) Because the alleged amendment provides that the legislature may nullify or repeal an amendment of the Constitution initiated by the people by a mere three-fourths vote. (D) Because the alleged amendment does not require that constitutional amendments, initiated by the people shall have three months public notice by the secretary of state as was formerly required under section 273.

For these five reasons we ask the court to reconsider and overrule the case of *State* v. *Brantley,* 74 So. 662.   All of the points here raised were not raised in the Brantley case. We are mindful that we are asking the court to overrule its decision whereby section 33, as amended, was formerly declared to be inserted into the Constitution by this court. In doing so, we fully realize the added burden placed upon

us and we cheerfully accept the same.   However, as we view this matter, the oaths that the several judges took to support and uphold the fundamental law in its full integrity is in our opinion more important than the mere following of precedent, should we be able to convince the court that the court was in error in inserting the alleged amendment.   Ruling Case Law, Volume 6, page 72, section 69; *Beck* v. *Allen*, 58 Miss. 174; *Garland* v. *Marshall*, 2 S. & M. 631; *State ex rel. Collins* v. *Jones*, 106 Miss. 522-577; *Powell case*, 77 Miss. 543.

Nor are the courts of this state alone on this matter. The supreme court of the United States in the case of *Pollocks* v. *Farmers Loan & Trust Company*, 39 L. Ed. 759-817; 157 U. S. 429-575; *Hand* v. *Stapelton*, 39 So. 551; *Postal Telegraph & Cable Company* v. *Powhatan Railroad Company*, 32 S. E. 468; *Hill* v. *State*, 37 S. E. 441; *Breckinridge*, 112 Ky. 1-62; *Labough* v. *Cook*, 127 Iowa, 181, 102 N. W. 1121; *Railroad Company*, reported in 171 Mo. 96, 70 S. W. 893; *McBee* v. *Brady*, 100 Pac. (Idaho) 103; *Ex Parte Pfahler*, 150 Cal. 71, 88 Pac. 270; 11 L. R. A. (N. S.) 1092; 6 Ruling Case Law, page 31, provides: "Coming to our last ground, that is, that the measure did not receive the required majority for its insertion, we desire first and foremost to commend to the court Judge HOLDEN's dissenting opinion upon this feature of the Brantley case. We fully concur in the logic therein expressed.

In support of Judge HOLDEN's statement therein that the burden of proof was placed upon the wrong party, we desire only to cite to the court one additional authority. That authority is *State ex rel. Phelan* v. *Walsh*, 17 L. R. A. 362.

2.   Should the Court Hold the Amendment Constitutional?   Then the Next Question Presented by the Appellants is Whether or not Those Provisions in said Amendment Granting the Right to Challenge the Initiative Petitions so as to Prevent Giving Effect to Said Petitions are Self-executing.   Under this division the appellants pre-

sent to the court three propositions. For convenience in argument, we take them in their inverse order, making the first last and the last first. (1) "The amendment is not self-executing as to the contest of the initiative petitions in the courts." (2) "The court was without jurisdiction." (3) "At the time of the filing the complainant he had suffered no injury or damage." 6 Ruling Case Law, page 32, sec. 24.

Taking the three arguments together and sustaining them would mean, no kind of challenge can be heard; any kind of petition will be sufficient; the secretary of state must decide it sufficient, and after doing so his decision on this question of fact is final and the matter closed.

The court will see the ultimate end of this argument is to strike down all the provisions and requirements of the constitutional amendment, and make it possible and certain that any kind of an initiative petition, under any kind of circumstances, may be filed and will necessarily become effective.

3. On the Merits of the Questions Presented in this Case. This is the first occasion that the sufficiency of an initiative petition has been challenged in this state. In the case of *Power* v. *Ratliff,* 112 Miss. 88, and in the *Brantley case,* 113 Miss. 786, there was no question as to the sufficiency of the petitions, as no one attempted to challenge the sufficiency of said petitions or to prevent the taking effect of same.

At the outset, we think it important before undertaking to present the questions involved to cite for the court's convenience certain rules of construction used by the courts when undertaking to construe and to apply constitutional provisions; also constitutional amendments. 6 Ruling Case Law, page 51, section 46; Secs. 24, 25, 6 Ruling Case Law; *Ferguson* v. *Monroe County,* 71 Miss. 524, 530.

It is further contended that a statute has not been provided giving to any person or class of persons the right to attack the validity of the petitions and that it would be preposterous to presume that one man should enjoy this

right. However, it seems that the constitutional amendment itself contemplated that a "person or persons" could attack the validity of such petition as it speaks of "the person or persons attacking the validity of the petition," and under the similar statute set out above, Chief Justice Campbell, in the case of *Ferguson* v. *Monroe County, supra,* said: "It seems clear to us that any qualified elector and taxpayer has the right to appeal from any decision of the board of supervisors ordering an election under section 1610 of the Code, for that is the only matter in the business in which the board is to make a 'decision.' "

In view of the fact that the amendment provides that in the event the sufficiency of a petition is challenged, the cause shall be tried at once in term time or vacation, and such cause shall be a preference cause over all the other causes; it seems clear that the challenge of a petition can be easily determined in the circuit court within the three months provided by law. If the circuit court declares such petition insufficient, of course, no election can be held at the next general election after the rendition of such judgment of the circuit court, but if the case were reversed by the supreme court within the three months and in time for the measures to be placed on the tickets, the election would be held at the first general election after filing the petitions, notwithstanding the adverse decision of the circuit court, as the present case demonstrates in a practical way.

We, therefore, contend in the first place that if the secretary of state has examined the face of the petition and finds it sufficient and regular in form, that if any citizen files a challenge in the circuit court contesting the validity of such petitions no election can be had until the circuit court has determined this issue, provided the contestant files his challenge in such seasonable time as the controversy can be determined in the circuit court, before it is necessary for the secretary of state to send out his sample ballots, and if by reason of the exigencies of any partic-

ular case the trial is delayed, and ultimately the petition is found to be sufficient that the election will be held at the first general election after the determination of the jurisdictional facts that the petitions are sufficient; or secondly, that if the circuit court is not the court of proper jurisdiction to hear such contests that *quasi-*judicial powers are vested in the secretary of state to hear and determine this question, and in the event he refuses to hear evidence of any sort and confines himself strictly to the face of the record, refusing to judicially determine whether or not an initiative petition contains the genuine signatures of seven thousand five hundred qualified electors, properly verified, a writ of *certiorari* will lie upon his refusal to act on the question as to whether or not the amendment is self-executing appellants contend, notwithstanding the fact that constitutional amendments may be submitted for ratification or rejection to the people under the initiative amendment, that an election can be called without the judicial determination by anyone that the petition is sufficient according to the standard of seven thousand three hundred qualified electors required by the constitution. *Allen* v. *State of Arizona,* 130 Pac. 1114, 44 L. R. A. 468.

In the case of *Thompson* v. *Vaughan,* 159 S. W. 45, the supreme court of Michigan held that by the express terms of the constitution, the secretary of state of that state was confined to an examination of the face of the petition, but there the Constitution provides some safeguards at least by requiring that each signer of petition shall add to his signature his place of residence, street and number in cities having street numbers, and the election precinct, but there is no such safeguard provided by our constitution. At any rate the Constitution of Michigan with the interpretation placed upon it by the Michigan supreme court is different from all other initiative laws. In every other Constitution, so far as we are advised, with the exception of Michigan the right to contest the sufficiency of initiative petitions is given to any citizen either by express enactment

or by judicial decision. *State* v. *Graves* (Ohio), 107 N. E. 1020; *Kemper* v. *Carter,* 165 S. W. 773; Revised Statutes 1909; *State ex rel.* v. *Allcott,* 72 Ore. 278; *Dagley* v. *McIndoe,* 176 S. W. 243; *Madison County* v. *Powell,* 75 Miss. 976; *Garner* v. *Webster County,* 79 Miss. 568.

The circuit court has every inherent and every statutory power to render full justice in a contest of this nature, and under our jurisprudence, as stated above, a contest of this nature is not new to the circuit court nor is it new to other tribunals such as boards of supervisors and municipal boards as courts of limited and inferior jurisdiction. We, therefore, submit that the circuit court was manifestly correct in overruling the demurrer which was directed only to the jurisdiction of the court.

On Writ of *Certiorari.* It is our contention that under our laws the question of the sufficiency of an initiative petition is a judicial matter expressly held to be such in cases already referred to, and that if the jurisdiction to judicially determine the sufficiency of petitions is not in the circuit court as a court of original jurisdiction, that necessarily such powers are vested in the secretary of state, for unless the whole matter is transferred to the circuit court at the time the challenge is filed in that court, then there is no other authority than the secretary of state who can determine the thing that must be determined, before an election can be held, namely, that the petition contains the genuine signatures of seven thousand five hundred qualified electors, and if judicial power to any extent is placed in the secretary of state by the constitution, *certiorari* would lie for errors in a trial before him where such errors show that the secretary of state, following the ruling of the attorney-general, held that he had no sort of judicial power, was merely a ministerial officer, and confined, so far as he was concerned, to an examination of the face of the initiative petition.

If *certiorari* lies under express enactment *supersedeas* follows. See sections 90 and 91 of the Code of 1906. In

conclusion, on this point of the case, we wish to insist that, under our view of the case where there is a challenge, an election is never properly called until a tribunal possessing proper jurisdiction has first determined that the initiative petition contains the genuine signatures of seven thousand five hundred qualified electors.

ETHRIDGE, J., delivered the opinion of the court.

On the 5th day of August, 1922, certain citizens, called sponsors, filed in the office of the secretary of state an assembled petition, consisting of numerous separate petitions, under chapter 159, Laws of 1916, known as the Initiative and Referendum Amendment, which petitions purport on their face to contain the signatures of more than seven thousand five hundred qualified electors of the state of Mississippi, asking for an election to initiate under said amendment a measure proposing a change in the compensation of the state revenue agent. On the 7th day of September, 1922, Stokes V. Robertson, as such state revenue agent, and as a taxpayer and a qualified elector of the state of Mississippi, filed with the said secretary of state his formal sworn petition and protest against the submission of the said proposed law to a vote at said election, challenging the sufficiency and legality of the said petition upon many grounds, charging that the said petition and every part thereof is illegal, void, and of no effect, and that the requirements of the law as to the initiation were not complied with in the proposing, circulating, and signing of said petition; that the petitions were circulated throughout the state of Mississippi, and were assembled and filed with the said secretary of state by certain persons as sponsors; that the entire petitions are fraudulent and void, and that each of the said petitions is likewise fraudulent and void, and that the persons circulating them, called the "sponsors" hereinafter, knew at the time they filed the petition that they contained the names that were not the signatures of qualified electors, and that they

knew that many of the names on said petitions were forgeries; and that one of the said sponsors has admitted that many of the names contained on the petitions were forgeries, yet he presented the same as petitions containing only genuine signatures of qualified electors.

It is also charged that other sponsors had similar knowledge and were guilty of similar practices, and yet that such sponsors filed affidavits which do not state the truth, and it is charged that each of the petitions and each affidavit thereto was false and untrue, in this: That no inquiry or investigation whatever was made as to whether or not the proposed signers were qualified electors, and in fact many of the purported signers were not in fact qualified electors; that in many instances the petitions were not signed in the presence of the sponsors as required by law, and that many of the names of the petitioners were signed not in the presence of the sponsors, but that petitions were left in many instances on counters in drug stores and other places of business, were circulated through proxies and offices where they were not permitted to go themselves, and passed from hand to hand in public gatherings, where many people who were present were not only not qualified electors, but some of whom were not residents of the state of Mississippi; that many signatures on each and every petition were forged, and the circulators of said petitions knew of such forgeries, and the said sponsors had positive knowledge that said petitions as a whole contained many names of persons who were not qualified electors, and had knowledge that many names were forged and not genuine signatures of said petitioners; that some of the names signed to said petitions were names of corporations; that the said sponsors falsely and fraudulently obtained signatures by falsely and fraudulently representing to the signers thereof that the proposed law was passed by an overwhelming majority of the legislature, but reached the governor's office too late to require him to return the same with his approval or disapproval, and that the gover-

nor had pigeonholed the said bill until the legislature assembled in 1924; that the sponsors knew of the falsity of this statement, and without such false representations the requisite number of signatures to call an election could not have been obtained; that it was falsely represented by some of the circulators of said petitions to those whom they solicited to sign that the revenue agent favored the proposed statute, which representations they well knew were false and untrue, but on account of such representations the signatures of many persons were obtained; that many of the signers signed two or more of such petitions circulated in separate parts, and that their names appeared on two or more such petitions, making it appear that such person was more than one qualified elector; that the petitions filed do not contain the required number of qualified electors, and are fraudulent and void, both as a whole and as a separate part.

It is further charged that the circulators of said petitions fraudulently represented the amount of the compensation received by the said revenue agent, and that they knew, when making such representations, that the revenue agent paid out of the moneys received by him large expenses to deputies, agents, and attorneys, and had to make many investigations, costing large sums of money, from which he received no recovery or compensation, and had to pay the entire expenses of running the office, as well as the traveling expenses of various officers and others employed by him throughout the state. It is further charged that of the genuine signatures of qualified electors to the said petitions more than enough have requested the secretary of state to withdraw their names from such petitions to reduce the number of genuine signatures thereon below seven thousand five hundred, if in truth and in fact said petitions had ever contained seven thousand five hundred qualified electors, which upon information and belief is denied.

It is further charged that chapter 159, Laws of 1916, under which the initiative petitions were filed, was not

legally submitted to and not legally adopted by the people of Mississippi as an amendment to the state constitution, and that the said amendment did not receive a majority of the qualified electors voting, and was not legally adopted by the people, and was not a proper part of the state constitution, inserted in the constitution by the legislature of 1916 in violation of section 273 of the constitution. It is further charged that, if said amendment is a part of the constitution, it is crude, uncertain, vague, and not self-executing, and that it is necessary for the legislature to enact laws providing a proper machinery for the execution of said provision, especially some definite mode in which the sufficiency of the petitions may be contested. It is further charged: That section 273 of the constitution of Mississippi is violated by the alleged Referendum Amendment, in that it provides that, if more than one amendment shall be submitted at one time, they shall be submitted in such manner and form that the people may vote for or against each amendment separately, and that the alleged amendment inserted by the legislature of 1916 contains, among other things, the following:

"The word 'measure' as used herein means any law, bill, resolution, constitutional amendment, or any other legislative measure. All elections on general, local and special measures referred to the people of the state shall be held at the general state or congressional elections, except when the legislature shall order a special election. Any measure submitted to the people, as herein provided, shall take effect and become law when approved by a majority of the votes cast thereon, and not otherwise."

That this provision has the effect to amend or modify the provisions of section 273 of the state constitution, which requires a measure to receive a majority of all votes cast in the election, whether such electors vote upon the constitutional amendment or not.

The challenger filed his challenge with the secretary of state, and also filed an identical challenge in the circuit

court of Hinds county, praying for a hearing and for a contest of the sufficiency of the petition to require the submission of the proposed measure to the people of the state for a vote at the general election.  The secretary of state set a day and notified all parties interested—that is, the sponsors of the petitions and the revenue agent—of a day when he would hear the said parties concerning said matter.  At the time and place fixed Stokes V. Robertson, state revenue agent, with his attorneys, appeared and offered to produce proof of the allegations contained in his challenge, and also offered and presented counted petitions containing the names of persons on the original initiative petitions, requesting the secretary of state to withdraw their names from such petitions.  The secretary of state submitted to the attorney-general the question as to whether he had power to hear and determine the facts with reference to the sufficiency of the petitions, or whether his duties under the said Initiative Amendment confined him to what appeared on the face of the petition, and also whether he had a right to strike from said petition such signatures of different electors made in the same handwriting and appearing to be forgeries on the face of the petition.  The attorney-general advised the secretary of state that he had no power to determine the questions of fact involved, and that he had no power to strike from the petitions the names of persons appearing to be written in the same handwriting and appearing to be palpable forgeries.  He also advised the secretary of state that he did not have the power to permit the withdrawal of signatures from the petition after it was filed, and that his duties are merely ministerial, and that he was limited to and bound by the petitions as they appeared upon their face, and if they contained the names of the requisite numbers and were supported by the required affidavit that it was his duty to order an election in accordance with the Initiative Amendment.  The secretary of state thereupon declined to hear proof touching the said matter, and in accordance

with the attorney-general's opinion issued his proclamation ordering the election.

The same day a petition for *certiorari* was filed in the circuit court, and a writ of *certiorari* was issued by the circuit judge, commanding the secretary of state to appear before the circuit court and to bring the entire record of proceedings before the secretary of state before the circuit court for review. The secretary of state, in accordance with the writ, produced the record of proceedings before him, and the sponsors of the petition were also summoned to appear as parties to such proceedings. The sponsors and the secretary of state appeared before the circuit court, and demurred separately to the proceedings on many grounds, among others challenging the right of the appellee to institute the proceedings, and challenging the jurisdiction of the circuit court to hear and determine the controversies. It will not be necessary to set out the several grounds of the demurrer. There was also a motion to quash the writ of *certiorari,* and a motion to vacate the writ of *supersedeas* granted, all of which demurrers were overruled, and the motions were overruled and denied. The court thereupon allowed the appellants leave to plead further, but they declined so to do, and final judgment was entered, prohibiting the secretary of state from ordering the election, and vacating his proclamation made calling said election on such petition. An appeal was prayed for and allowed, but allowed without *supersedeas.*

Chapter 159, Laws of 1916, known as the Initiative Amendment, reads as follows:

"Sec. 33. The legislative authority of the state shall be vested in a legislature which shall consist of a Senate and a House of Representatives, but the people reserve to themselves the power to propose legislative measures, laws, resolutions and amendments to the Constitution, and to enact or reject the same at the polls independent of the legislature; and also reserve the power, at their own option, to approve or reject at the polls any act, item, section or

any part of any act or measure passed by the legislature.

"1. The first power reserved by the people is the initiative, and not more than seven thousand five hundred qualified electors shall be required to propose any measure by initiative petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the secretary of state not less than three months before the election at which they are to be voted upon.

"2. The second power reserved by the people is the referendum, and it may be ordered either by a petition signed by the required number of qualified voters or by the legislature, as other bills are enacted. Not more than six thousand qualified voters may be required to sign and make valid referendum petition. The filing of a referendum petition against one or more items, sections or parts of any measure shall not delay the remainder from becoming operative. Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature at which such measures were passed, except when adjournment shall be taken temporarily for a longer period than ninety days, in which case such petition shall be filed not later than ninety days after such temporary adjournment. All measures referred to a vote of the people by referendum petitions shall remain in abeyance until such vote is taken.

"3. If it shall be necessary for the immediate preservation of the public peace, health or safety, then a measure shall become effective without delay; such necessity shall be stated in one section, and if, upon a yea and nay vote, three-fourths of those voting in each house shall vote in favor of the measure going into immediate operation, such measure shall become operative at once. It shall be necessary to state in such section the facts constituting such emergency: Provided, that an emergency shall not be declared on any franchise or special privilege or act creating any vested right or interest, or alienating any property

of the state.  If a referendum petition is filed against such emergency measure; such measure shall be a law until it is voted upon by the people, and if it is then rejected by a majority of the voters voting thereon, it shall be thereby repealed.

"4.  The word 'measure' as used herein means any law, bill, resolution, constitutional amendment, or any other legislative measure.  All elections on general, local and special measures referred to the people of the state shall be held at the general state or congressional elections, except when the legislature shall order a special election. Any measure submitted to the people, as herein provided, shall take effect and become law when approved by a majority of the votes cast thereon, and not otherwise.  Such measure shall be in operation on and after the thirtieth day after the election at which it is approved.  The veto power of the governor shall not extend to measures initiated by or referred to the people.  If conflicting measures submitted to the people shall be approved by a majority of the votes severally cast for and against the same, the one having the highest number of affirmative votes shall thereby become law.  No measure enacted by a vote of the people shall be amended or repealed by the legislature except by yea and nay votes, upon roll call, of three-fourths of the members of each house voting thereon.  Qualified electors only shall be counted upon petitions.  Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto the affidavit of the person circulating the same, that all the signatures thereon were made in the presence of the affiant and that to the best of affiant's knowledge and belief each signature is genuine, and that the person signing is a qualified elector, and no other affidavit or verification shall be required. The sufficiency of all petitions shall be decided by the secretary of state.  In the event that the sufficiency of the petition is challenged, the question shall be tried at once, in term time or in vacation, and such cause shall be a preference cause over all other causes.  If the secretary of

state shall decide any petition to be insufficient, he shall, without delay, notify the sponsors of the petition and permit at least thirty days for correction or amendment.   In the event of legal proceedings in any court to prevent giving effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition.   This section shall not be construed to deprive any member of the legislature of the right to introduce any bill.   The style of all bills initiated by petition shall be: 'Be it enacted by the people of the state of Mississippi.'   In submitting the measures, the secretary of state and all other officials shall be guided by the general election laws until additional legislation may be provided therefor, but no legislation shall be enacted to impair or hamper the exercise of the rights herein reserved to the people."

We will first deal with the right of the appellee to institute proceedings challenging the sufficiency and validity of the petition.   To reach a satisfactory conclusion it will be necessary to consider what was the intention of the legislature in submitting the amendment and the voters in voting thereon with reference to what should be done ordering an election.   To initiate a measure there shall be not more than seven thousand five hundred qualified electors to propose such measure and such petition or proposal shall include the full text of the measure proposed to be enacted.   The word "measure" as used means any law, bill, resolution, constitutional amendment, or any other legislative measure.   Qualified electors only shall be counted upon the petition.   Petitions may be circulated and presented in parts but each part in a petition shall have attached thereto the affidavit of the person circulating the same that all of the signatures thereon were made in the presence of the affiant, and that to the best of affiant's knowledge and belief each signature is genuine, and that the person signing is a qualified elector.   The sufficiency of all petitions shall be decided by the secretary of state.   In the event that the sufficiency of the petition is

challenged, the question shall be tried at once in term time or in vacation, and such cause shall be a preference cause over all other causes. If the secretary of state shall decide any petition to be insufficient, he shall without delay notify the sponsors of the petition and permit at least thirty days for correction or amendment. In the event of legal proceedings in any court to prevent giving effect to any petition upon any grounds the burden of proof shall be upon the person or persons attacking the validity of a petition. Generally constitutional provisions are mandatory, and it is evident that both the legislature in proposing and the people in approving the proposed amendment intended that the petition should be signed only by qualified electors signed with their personal signatures and that the sufficiency of the petition as a matter of substance as well as form should be determined in advance of the election by the secretary of state.

In our opinion it was intended to confer upon the secretary of state the power to hear evidence and decide facts. He proceeds upon inquiry and determines facts and in our judgment is an inferior tribunal having *quasi*-judicial powers. The amendment clearly contemplates that the sufficiency of the petition may be challenged. It recognizes the rights of both the proponents of the measure and of the opponents of the measure. It recognizes the right of either a person or a number of persons to attack the validity of the petition. It recognizes the rights of the sponsors of the petition to amend or correct the petition in the event it is held to be insufficient. The amendment recognizing the right of a person or persons to institute proceedings of challenge, to whom does it confer the right to challenge? In our opinion any qualified elector has a right to question the sufficiency and validity of the petition. The initiative proceeding, reserving the legislative power in the people, makes each elector, if the amendment is valid, a part of the legislative machinery, and with rights as such in the enactment and proposal of legislation. The people who oppose the measure in our opinion

have equal rights with those who favor the measure. This is a more reasonable construction, as well as a more just one, than it would be to hold that a part of the electorate would have a right to propose a measure which the other part did not have a right to oppose. It is said that rights of this kind are political rights and are not subject to adjudication in the courts; that the courts have no right to entertain jurisdiction to test any question affecting the power to make laws, but can only deal with the finished product, and if there is no right in court or in any tribunal fixed by law to determine and enforce a right that no party affected is a competent party authorized to raise the question. We think, in dealing with the subject, that a distinction must be drawn between elections ordered by law at fixed times and places, or an election ordered by the legislature without conditions precedent, and those elections that can only be held when certain conditions have come into existence.

This court in many analogous cases has held that, when conditions are prescribed as a condition to the holding of an election, the determination of the precedent facts is a judicial or *quasi*-judicial proceeding, and that the persons interested may contest such determination of the precedent facts. In *Ferguson* v. *Monroe County,* 71 Miss. 524, 14 So. 81, it was held that, in determining whether a petition for a local option election is signed by the requisite number of the qualified electors in the county, the registration books are not conclusive or even *prima-facie* evidence that the persons registered are qualified voters; that, in order to ascertain whether the petition is signed by the necessary number of voters, the board of supervisors should take the registration books as showing all possible qualified voters, and that they should reject from the petition those who are not registered, and those who, if registered, have not the other requisite qualifications of voters; and also that the board should reject every name on such petition not signed in the handwriting of the petitioner himself or by his proper mark—the statute in that case

providing, as it does here, that the signature of the petitioners should be in their proper handwriting.

In that case Ferguson and other qualified electors and taxpayers of the county appeared before the board and protested in writing against the ordering of the election on the ground that the petition was not signed by the requisite number of electors of the county. They offered to prove that a great many names were not signed by the parties purporting to have signed the same; that some of the signers were dead; that others were not qualified because they had not paid their taxes before February 1st for the two preceding years as required by law. The board refused to go into an investigation of these several matters, and held that it could not go outside of the registration books in determining the number of qualified electors, and refused to disregard the names not signed by the petitioners themselves, but signed by their authority. The objectors offered evidence to show that several hundred names did not appear on the registration list, and that many names appeared on the petition more than once. The board declined to hear the evidence, but announced that it would investigate for itself and make a comparison of the registration list, and for itself determine whether there were names repeated. The protestants there, as here, offered and filed a written petition of a number of persons who had signed the petition, asking that their names be taken therefrom and not counted, but the record did not show any action taken by the board in that regard. The facts there offered to be shown, if established, would have reduced the number of qualified electors on the petition below the required two-thirds. The board ordered the election, and the objectors tendered a bill of exceptions and prosecuted an appeal to the circuit court. The board moved in the circuit court to dismiss the appeal, on the ground that chapter 37, Code of 1892, did not provide for an appeal from the decision of the board ordering an election. On appeal the supreme court, in a lengthy opinion

130 Miss—15

by Chief Justice CAMPBELL, upheld the right to contest, including the right to appeal, and the right of citizens as such to prosecute an appeal from such cases.  The law and the facts of that case are analogous to the proceeding before us.

In *Corbett* v. *Duncan,* 63 Miss. 84, and *Loeb* v. *Duncan,* 63 Miss. 89, are cases also analogous to the present proceeding.  In those cases it was held that the municipal authorities of the town, in deciding that a petition for a liquor license was signed by the requisite number of qualified electors, in granting the license, were acting in a *quasi*-judicial capacity, and that, as there was no appeal provided by the statute from their decision (as is the case here), *certiorari* would be awarded by the circuit court to one of the voters of the town to review and revise their action.

In *Rogers* v. *Hahn,* 63 Miss. 578, the court held that the municipal authorities of a town should not grant a license, unless the petition contained a majority of all the legal voters, and, if the record failed to show that the petition contained the requisite majority, that a writ of *certiorari* would lie in favor of a qualified elector of the town.

In *McCreary* v. *Rhodes,* 63 Miss. 308, the court held that where a qualified voter of a city, who appeared before the municipal authorities of the said city some time after the filing of the petition for a license to retail liquor, but before final action thereon, objects to the issuance of said license, he thereby makes himself a party to and becomes connected with the proceedings sufficiently to enable him to secure a writ of *certiorari* and have the same reviewed. See, also, *Deberry* v. *Holly Springs,* 35 Miss. 385; *Wilson* v. *Wallace,* 64 Miss. 13, 8 So. 128; *Gulf & S. I. R. R. Co.* v. *Adams,* 85 Miss. 772, 38 So. 348; *Robinson* v. *Mhoon,* 68 Miss. 712, 9 So. 887; *Madison County* v. *Powell,* 75 Miss. 762, 23 So. 425.

In *State ex rel.* v. *Olcott,* 62 Or. 277, 125 Pac. 303, it was held that the filing of the petition for a referendum is not a legislative act, but merely a matter preliminary to the

legislative act, and hence an investigation into the sufficiency is not beyond the jurisdiction of the court; that, to constitute a legally sufficient petition, it must be a valid petition, signed by legal voters, and complying substantially with the requirements of law, and, although a petition appears regular on its face, the court may inquire into its legal sufficiency. It was also held that, where referendum petitions contained evidence of forgeries perpetrated either by circulators or with their connivance, the *prima-facie* case in favor of the genuineness of the petition is overcome.

The appellants cite and rely upon *Power, Secretary of State* v. *Ratliff*, 112 Miss. 88, 72 So. 864, Ann. Cas. 1918E, 1146, to support their contention that the court has no jurisdiction to prevent the holding of an election. This case arose upon a bill for injunction to prevent the holding of an election ordered under the same amendment here involved. The court declined to take jurisdiction of the controversy, on the ground that equity had no jurisdiction to enjoin elections or enforce political rights, in which conclusion we concur. The court raised the question of jurisdiction for itself, and declined to entertain the suit, and dismissed the bill because equity had no jurisdiction. A good deal is said in the opinion upon other features of the question involved, but the only thing that the court decided there was that equity had no jurisdiction in such cases. Quite a different question is presented here, because it is a circuit court whose jurisdiction is invoked, and whose judgment is sought to be reviewed in this case.

Section 156 of the state Constitution reads as follows:

"The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law."

Section 702, Code of 1906 (Hemingway's Code, section 481), giving the general jurisdiction of the circuit courts, reads as follows:

"The circuit court shall have original jurisdiction in all actions when the principal of the amount in controversy exceeds two hundred dollars, and of all other actions and causes, matters and things arising under the constitution and laws of this state which are not exclusively cognizable in some other court, and such appellate jurisdiction as prescribed by law; and such court shall have power to hear and determine all prosecutions in the name of the state for treason, felonies, crimes, and misdemeanors, except such as may be exclusively cognizable before some other court;.and said court shall have all the powers belonging to a court of oyer and terminer and general jail delivery, and may do and perform all other acts properly pertaining to a circuit court of law."

Section 90, Code of 1906 (Hemingway's Code, section 72), reads as follows:

"All cases decided by a justice of the peace, whether exercising general or special jurisdiction, may, within six months thereafter, on good cause shown by petition, supported by affidavit, be removed to the circuit court of the county, by writ of *certiorari,* which shall operate as a *supersedeas,* the party, in all cases, giving bond, with security, to be approved by the judge or clerk of the circuit court, as in cases of appeal from justices of the peace; and in any cause so removed by *certiorari,* the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings. In case of an affirmance of the judgment of the justice, the same judgment shall be given as on appeals. In case of a reversal, the circuit court shall enter up such judgment as the justice ought to have entered, if the same be apparent, or may then try the case anew on its merits, and may in proper cases enter judgment on the *certiorari* or appeal bond, and shall, when justice requires it, award restitution. The clerk of the circuit court, on the issuance of a *certiorari,* shall issue a summons for the party to be affected thereby; and in case of nonresidents, may make publication for them as in other cases."

Section 91 Code of 1906 (Hemingway's Code, section 73), reads as follows: "Like proceedings as provided in the last section may be had to review the judgments of all tribunals inferior to the circuit court, whether an appeal be provided by law from the judgment sought to be reviewed or not."

It will be seen from a reading of these sections that the circuit court has jurisdiction of all questions cognizable in the courts that have not been exclusively vested in other courts. It is said that the questions here sought to be litigated are political and that political questions cannot be litigated in the courts. Almost all of the political rights of the citizens are guaranteed and prescribed by law, either constitutional law, statute law, or common law. We find the qualifications of electors prescribed by law and that the circuit court entertains suits to enforce those rights. The circuit court entertains suits to settle a great variety of political questions not necessary to be enumerated here. Under the decisions we have already cited in dealing with the right of the appellee to institute suit, the right of the circuit court to entertain the suit is also shown. Many other cases could be cited.

In *Western Union Tel. Co.* v. *Kennedy,* 110 Miss. 73, 69 So. 674, it was held that *certiorari* was the exclusive remedy to review a decision of the railroad commission as railroad assessor of the state, and that if a person neglected to avail himself of the remedy therein provided he could not re-litigate the case under *section 533, Code of 1906* (Hemingway's Code, section 290).

In *Crawford* v. *Gilchrist,* 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916, it was held that, if the mandatory provisions of the organic law are ignored in amending the Constitution, it violates the right of all of the people in the state to government regulated by law. It seems to us that the same would be true, where the provisions of the organic law are violated in proposing initiative legislation.

This brings us to the consideration of whether or not the judgment of the circuit court should be affirmed. Much has been said in the argument on the question as to whether the amendment is self-executing, or whether it would take additional legislation to make the provisions of the amendment effective, and especially with reference to that part of the amendment that provides for making a contest of the validity of the petition a preference suit to be tried at once in term time or in vacation; it being ably and earnestly argued for the appellant that there is not sufficient machinery in the amendment itself to provide for the contest here sought to be brought about. But it is argued that the part providing for the initiative petition and the ordering of an election is self-executing; that there is no machinery by which the secretary of state can proceed, nor any method provided for him to secure presence of witnesses and documents, swear witnesses, etc., necessary for the determination of questions of fact. It is argued by the appellee that, if the amendment is not self-executing, the election cannot be held at all, and the judgment of the court for this reason must be affirmed. It is also alleged and assigned for error that the said amendment set out in the statement of the case is unconstitutional, and that the case of *State ex rel. Howie* v. *Brantley,* 113 Miss. 786, 74 So. 562, Ann. Cas. 1917E, 723, was incorrectly decided, and that there are additional reasons making the submission of the amendment void from those considered in that case.

The construction of the amendment above set out is difficult, and it is difficult to determine under that amendment, standing alone, as it does, without aid of legislation, whether the contention of the appellants is well taken or not. The conclusion we have reached, though upon a reconsideration of this question, leading as it does to the conclusion that the *Brantley case, supra,* was erroneously decided, and that the initiative amendment conflicts with the Constitution, relieves us from deciding many of the

difficult questions presented in the record. When the Brantley case was first decided, it was decided, as appears from the *per curiam* opinion, that the different judges who concurred therein reached their conclusions on different grounds. The writer hereof participated in that decision and concurred in the conclusion then reached. The court as then constituted was divided upon the several questions there presented in such way as to make it very difficult for a majority to reach the same conclusion upon the same line of reasoning. I then thought that the constitutional amendment had been validly submitted and legally adopted, and that it became a part of the Constitution. I concurred in the view that an amendment was single, instead of double, when there was unity in its ultimate end, and that, viewing section 33 of the Constitution as amended in this light, it dealt with legislation only, even though one feature dealt with statutes, and the other with amendments to the Constitution. I have since given a great deal of thought to this decision and to this amendment.

I have become convinced that the delegation of power to the legislature and the amendment of the Constitution are separate and distinct things. The power to change or amend the Constitution has never been delegated to the legislature. Amendments proposing constitutional changes have never been regarded as bills which must be sent to the Governor for his approval under section 72 of the Constitution. While a Constitution is law, it is not such a law as the legislature may enact. It is something reserved from the legislative power, or rather something that never was delegated in delegating legislative power. The Constitution is the product of the people in their sovereign capacity. It was intended primarily to secure the rights of the people against the encroachments of the legislative branch of the government. It is organic and fundamental, and it is not sufficient to say that, because each involves somewhat the exercise of the legislative power in its promulgation, it is a single subject, within the meaning of section 273 of the Constitution.

The proposed amendment deals with much more than what we considered in the *Brantley case, supra.* It not only reserves to the people the right to participate in legislation, but it involves also a right to amend the Constitution, and without reference to the legislature, and imposes very many restraints upon the legislative power, apart from reserving to the people a power to legislate, and changes very materially many of the other sections of the Constitution. It creates a situation with reference to law heretofore unknown. It not only confers on the people the power to make laws, and to amend laws, and to repeal laws, but it gives to the people, and to a very small per cent. of the people, the right to suspend laws of every kind by the simple expedient of filing a referendum petition within ninety days after the legislature shall have adjourned. It also expressly takes from the governor the power to veto bills, so as to cause their reconsideration, as conferred without stint or limit in section 72 of the Constitution. This materially changes section 72 of the Constitution, as well as sections 33 and 273.

Under the law as it stood before the submission of this amendment, as to statutes in conflict with each other, the first gave way to the last, and the last enactment was the law. Under the proposed amendment it is provided that, if conflicting measures submitted to the people shall be approved by a majority of the votes severally cast for and against the same, the one having the highest number of affirmative votes shall thereby become law. It does not provide that, if these measures are submitted at the same time, the one having the highest vote shall prevail, and it is open to doubt as to whether it could be held by construction to mean this. In other words, it might be held that, to repeal a measure enacted by people through the initiative, it would take a greater vote than the first measure received to accomplish that purpose, even though the last measure received a majority of the votes cast thereon. Again, it is provided that no measure enacted by the people

shall be amended or repealed by the legislature, except by yea and nay votes upon a roll call three-fourths of the members of each house voting thereon. This imposes a limitation upon the power of the legislature as such which was not in the Constitution, and makes it practically impossible for the legislature to deal with the law enacted through the initiative. Again, it seems to carry the idea that, when construed as a whole, three-fourths of the legislature—that is, to say three-fourths of each house—could repeal a constitutional provision enacted through the initiative.

Again, the amendment changes the rule with reference to the vote required upon constitutional amendments. Section 273 of the Constitution provides that in case an amendment is submitted it must receive a majority of the votes cast in the election, regardless of whether the voter votes for or against the constitutional measure; whereas, the said amendment provides that when it is approved by a majority of the votes cast thereon it shall be effective. In other words, the new amendment is governed solely by the vote cast for and against the amendment; whereas, the Constitution provides that a majority of all the votes voting in the election shall be required to approve the measure.

There is another phase of the question that calls for consideration, because the amendment, if valid, would render ineffective many of the limitations upon the law-making power contained in other sections of the Constitution. For instance, section 81 of the Constitution provides that the legislature shall never authorize the permanent obstruction of any of the navigable waters of the state, etc. The section, when enacted, prohibited absolutely any law of the kind being enacted; but, if the Initiative Amendment is valid, it would appear that the people, through the initiative, could enact such a law; that is to say, seven thousand five hundred voters could initiate the proceeding, and a mere majority of those voting for or against the measure could pass it.

Again, section 91 of the Constitution provides that the legislature shall not enact any law for one or more counties not applicable to all of the counties of the state, increasing the uniform charge for the registration of deeds, or regulating costs and charges and fees of officers. This was in fact, and was intended to be, an absolute prohibition upon legislation of this kind; but, if the amendment is adopted and valid, it would appear to be only a limitation upon the legislature itself, and not a prohibition of the law of that kind. Section 92 of the Constitution prohibits the legislature from authorizing the payment of salaries of deceased officers beyond the date of their deaths. Section 93 prohibits the legislature from retiring any officer on pay, or part pay, or making any grant to such officer. Section 94 prohibits the legislature from making any distinction between the rights of men and women to acquire, own, enjoy, and dispose of all kinds of property and to make contracts in reference thereto. Section 96 prohibits the legislature from granting extra compensation, fee, or allowance to any public officer, agent, servant or contractor after service rendered or contract made, nor authorize the payment, or part payment, of any claim under any contract not authorized by law.

Section 97 prohibits the legislature from reviving any remedy which may have become barred by lapse of time or any statute of limitation of the state. Section 179 of the state Constitution provides that the legislature shall never remit a forfeiture of the franchise of any corporation now existing, nor alter nor amend the charter thereof, nor pass any general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter and franchises subject to the provisions of this Constitution, etc. Section 197 of the Constitution forbids the legislature to grant any foreign corporation or association a license to build, operate or, lease any railroad in this state.

There are many other provisions of the Constitution which prohibit the legislature from doing certain things.

These prohibitions were absolute on the law-making power. They deal with a great variety of subjects, and it is manifest that the Initiative Amendment, if held to be valid, will result in amending these several provisions, because it has the effect of entirely changing the effect and meaning of these sections.

It is always a matter of regret that a court feels called upon to change a decision once reached; but official integrity requires a court, when it is fully convinced that its decision is wrong and will result injuriously, to overrule it and decide correctly the proposition put up to it. I am not a believer in overruling decisions, when they are not clearly wrong and hurtful. A Constitution, however, is much more important and sacred than a decision of any court. The people by the Constitution establish a policy for the good of the people themselves. Where a court misconstrues the Constitution or misjudges a case, and its attention is called to it in the proper way, it should make a .correction at the earliest date possible. *Beck* v. *Allen,* 58 Miss. 143 et seq.

Since the Brantley decision, this is the first case involving the question which has been presented to this court, attacking the soundness of that decision. Two of the judges dissented in able opinions, and after full consideration of the question involved, mindful of the importance of the case and the decision we announce, we have been compelled. by the forces of reason and conscience to overrule the *Brantley case, supra,* and declare the chapter known as the Initiative Amendment unconstitutional and void. Nothing in this opinion modifies or affects the case of *State ex rel. Collins* v. *Jones,* 106 Miss. 522, 64 So. 241.

The judgment of the court below will therefore be affirmed.

*Affirmed.*

HOLDEN, J.

I concur generally in the views expressed by the majority opinion, in that the Initiative and Referendum Amend-

ment to the Constitution is void, because it was not properly submitted to the voters as required by section 273 of our Constitution. I maintained this view and expressed it in a dissenting opinion in *State ex rel. Howie* v. *Brantley,,* 113 Miss. 821, 74 So. 662, Ann. Cas. 1917E. 723, in the year 1917.

I specially concur in the majority decision, now holding the amendment void, upon the ground that a majority of the qualified electors voting at the election did not vote for it, and therefore, under section 273 of the Constitution, it was never adopted by the people. This view was also expressed in my dissenting opinion in the case of *Howie* v. *Brantley, supra,* 113 Miss. 816, 74 So. 662, Ann. Cas. 1917E, 723, and I now refer to it as demonstrating the fact that the amendment was not adopted by a majority of the qualified electors voting at the election, when it was submitted for ratification or rejection, under the Constitution (section 273) and the prior decisions of this court.

SMITH, C. J. (dissenting.)

I am of the opinion that the judgment of the court below should be reversed, and the cause, if such it be, should be dismissed.

Among the questions presented for decision by this record are, first, the right of the revenue agent to maintain the action; second, the jurisdiction *vel non* of the court below; and, in event the two foregoing questions should be decided in accordance with the appellee's contention, then, third, is the judgment rendered correct?

The interest which the appellee claims in this controversy, by virtue of which he is entitled to maintain the action is, first, that he is a taxpayer; and, second, that his office will be adversely affected by the proposed law, neither of which, if *Power* v. *Ratliff*, 112 Miss. 88, 72 So. 864, Ann. Cas. 1918E, 1146, is to be followed, will avail him for that purpose, for it was there held that neither a taxpayer nor a person whose office will be abolished by the enactment

of a proposed law under section 33 of the Constitution can invoke the restraining power of the courts to prevent the holding of an election for the adoption of the law. This holding is in accord with previous decisions of this court, particularly *Gibbs* v. *Green,* 54 Miss. 592, and *Conner* v. *Gray,* 88 Miss. 489, 41 So. 186, 9 Ann. Cas. 120.

But if *Power* v. *Ratliff, supra,* is not to be followed, then the question of the jurisdiction of the court below of a cause of the nature of the one presented by the record arises in determining which we must look to the amendment to section 33 of the Constitution, and, if no such jurisdiction is there conferred, then to other provisions of the Constitution, the statutes and the common law. The amendment to section 33 of the Constitution does not in express terms confer jurisdiction on any court to decide the sufficiency of a petition proposing the enactment of a law under it, and I am of the opinion that no such jurisdiction is conferred by implication.

The amendment to section 33, after providing that "the sufficiency of all petitions shall be decided by the secretary of state" and of what the proof or verification thereof shall consist, provides that—"In the event that the sufficiency of the petition is challenged, the question shall be tried at once, in term time or in vacation, and such cause shall be a preference cause over all other causes. . . . In the event of legal proceedings in any court to prevent giving effect to any petition, upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition."

This language neither confers jurisdiction nor provides a procedure by which jurisdiction may be exercised. The utmost effect that can be given to it is that, when the sufficiency of the petition is called in question in a court having jurisdiction thereof, the cause shall be given preference over other cases, tried either in term time or vacation, and that the burden of proving the petition's insufficiency shall be upon the party attacking it. It creates no cause of action, nor confers any right, but simply regulates

the exercise of a right, or the disposition of a cause of action, that may arise by virtue of some other provision of the Constitution, of a statute, or of the common law.

One of the contentions of counsel for the appellee seems to be that the amendment to section 33 of the Constitution creates a new cause of action and new jurisdiction, to be known as a challenge of the sufficiency of a petition filed under the amendment, for they style the initial pleading filed by them in the court below as a "challenge," refer to the appellee therein as the "challenger," and the allegation therein is that he "comes and challenges," etc. The word "challenge," in the amendment, can have no such signification. It means simply "called in question," and the amendment must be construed as if it read:

"In event that the sufficiency of the petition is called in question," etc.

The provision of section 156 of the Constitution giving to the circuit court "jurisdiction in all matters, civil and criminal, . . . not vested . . . in some other court," and of section 702, Code of 1906 (section 481, Hemingway's Code), that it shall have "jurisdiction in all . . . actions and causes, matters and things arising under the Constitution and laws of the state which are not exclusively cognizable in some other court," created neither a new jurisdiction nor cause of action. It simply provides that such as exist and have not been assigned to some other court shall be cognizable in the circuit court.

The only other statute which could be or is sought to be invoked by the appellee is section 91 Code of 1906 (section 73, Hemingway's Code), under which the circuit court may "review the judgments of all tribunals inferior to" it by means of a writ of *certiorari,* which statute will be hereinafter considered.

Coming, now, to the common law, it is undoubtedly true that by virtue thereof the circuit court has jurisdiction to restrain some public officers under some circumstances from exercising a power not conferred on them by law,

which jurisdiction it exercises by the issuance of a writ of prohibition. One of the appellee's counsel stated on the oral argument that in instituting this proceeding counsel for the appellee were in doubt as to the exact nature of the jurisdiction which the court below could exercise, and consequently tried to frame their pleadings so that a cause of action might be presented under either the common law or writ of *certiorari* jurisdiction or both. The judgment rendered indicates that the court also entertained a similar doubt, for in some of its features it resembles a judgment in a proceeding for a writ of prohibition, and in others of a review of a judgment of an inferior tribunal on a writ of *certiorari.*

"The writ of prohibition is an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior tribunal, properly and technically denominated such, or to an inferior ministerial tribunal possessing incidentally judicial powers, and known as a *quasi*-judicial tribunal or even in extreme cases to a purely ministerial body, commanding it to cease abusing or usurping judicial functions."

It will not be issued when the tribunal or officer to whom it is sought to be directed had been invested with the jurisdiction exercised, though the order entered by it or him may be erroneous for other reasons, and not when the injury complained of by the person seeking it can be redressed in another procedure or tribunal. 32 Cyc. 598 et seq.; *Clayton* v. *Heidelberg,* 9 Smedes & M. 623; *Crittenden* v. *Booneville,* 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518.

Under section 3241, Code of 1906 (section 2543, Hemingway's Code), the procedure for determining whether or not a writ of prohibition shall issue is that provided by section 3231, Code of 1906 (section 2533, Hemingway's Code), et seq.; and while the two petitions filed by the appellee in the court below are not in approved and technical form for a writ of prohibition proceeding, it may be, and I shall concede, that under section 729, Code of 1906 (section 512, Hemingway's Code), the writ should issue, in

event it can be gathered from the allegations of the petition that the appellee is entitled thereto.

The ordinary duties of the secretary of state are admittedly purely ministerial, and this court stated in *Power* v. *Ratliff,* 112 Miss. at page 94, 72 So. 864, Ann. Cas. 1918E, 1146, that those imposed on him by the amendment to section 33 of the Constitution are also ministerial.  The judicial power, which the appellee claims is here conferred on the secretary of state, is to determine the sufficiency of the petition.  The power thus conferred is nothing more than he would have had to discharge, had the provision been omitted, and is that which rests upon every ministerial officer, to wit, to determine whether or not the facts exist which require the performance by him of any act; his duty being always not to act unless he is required so to do by the law when applied to existing facts.  In order to determine such a question, it is always necessary for a ministerial officer to examine into and determine questions of fact, but in so doing he is exercising neither a judicial nor *quasi*-judicial power.

Judicial power "is the power of a court to decide and pronounce a judgment and carry it into effect between persons or parties who bring a case before it for decision." 2 Bouvier's Law Dictionary, 1740; 11 C. J. 120; *Railroad Co.* v. *Adams,* 77 Miss. 776, 25 So. 355; *Flournoy* v. *City of Jeffersonville,* 17 Ind. 169, 79 Am. Dec. 468; *Board of Supervisors* v. *Melton,* 123 Miss. 615, 86 So. 369.  There are no parties to the proceeding by the secretary of state to determine the sufficiency of a petition, and he is required to make no order or judgment therein, but simply to proceed with the ministerial act of submitting the law proposed by the petition to the qualified electors of the state in the manner required by the election laws.  Moreover, the power to determine the sufficiency of the petition is expressly conferred on the secretary of state by the amendment to the Constitution here in question, and as hereinbefore pointed out a writ of prohibition will lie only to

restrain the exercise of a power either not conferred at all or in excess of that which is conferred.

Another reason why the restraining power of a circuit court cannot be invoked to prevent the holding of this election is that this court held, in *Power* v. *Ratliff*, 112 Miss. 88, 72 So. 864, Ann Cas. 1918E, 1146, that the courts will not restrain the holding of an election under the provisions of section 33 of the Constitution, for the reason that the judicial department of the government should not interfere with the exercise by the political department of purely political powers. It is true that that case arose in the chancery court, and the one at bar in the circuit court; but the ground on which the decision there turned is equally applicable to a case originating in the circuit court. The holding in that case is in accord with other decisions of this court, particularly in *Gibbs* v. *McIntosh*, 78 Miss. 648, 29 So. 465, wherein the court said that: "The trend of judicial thought in this state is that elections of all sorts are not to be interfered with by the courts."

An examination of the cases referred to by counsel for the appellee, wherein the courts have restrained the holding of an election, other than *Simpson County* v. *Buckley*, 81 Miss. 474, 33 So. 650, will disclose that they were cases in which an appeal to the courts was expressly provided by the statute under which they arose, or was held to lie under the general statute regulating appeals to the circuit court from judgments rendered by other tribunals. There can be no merit in the distinction sought to be made between valid and invalid elections, in so far as the question of the court's jurisdiction is concerned. The question of the validity *vel non* of an election can arise only after a court has assumed jurisdiction of the cause in which that question is presented for decision.

Coming, now, to the jurisdiction of a circuit court under section 91, Code of 1906 (section 73, Hemingway's Code), which provides that it may review the judgments of inferior tribunals by means of a writ of *certiorari*, it is clear that no such jurisdiction can be here entertained. That

statute provides only for a review by the circuit court of "judgments" rendered in a judicial proceeding and not of mere administrative orders, even though the person or tribunal making such orders must have investigated and decided questions of fact in so doing. *Board of Supervisors* v. *Melton,* 123 Miss. 615, 86 So. 369. And, as hereinbefore pointed out, no judgment in a judicial proceeding is here involved. But if I should be mistaken in this, and the court below had jurisdiction under the statute last referred to, the judgment rendered does not conform to the requirements of section 90, Code of 1906 (section 72, Hemingway's Code), for the trial of causes removed to the circuit court by the writ of *certiorari.*

Under this statute a cause is not tried in the circuit court on pleadings there filed, but on the record removed from and made in the inferior court. *Board of Supervisors* v. *Melton,* 123 Miss. 615, 86 So. 369. And unless an error appears on the face of that record the inferior court's judgment should be affirmed. But, if such an error appears, then the judgment that should be rendered by the circuit court is either that which it appears from the face of the record to be proper, or the cause may be tried anew on its merits. The court below evidently proceeded on the theory that, unless the allegations of the appellee's petition were denied by a plea or answer, no issue was presented for decision, and that judgment must be rendered for the appellee in accordance with the prayer of his petition, without a trial on the merits.

Conceding, but merely for the sake of the argument, that the secretary of state erred in not hearing the evidence offered by the appellee in support of his objections to the sufficiency of the petition, and that that error appears from the face of the record, then the court below should have set aside the order made by the secretary of state (if he in fact made any order at all within the meaning of that term), and tried the objections of the appellee to the sufficiency of the petition on their merits, on which trial, under the express language of the Constitution, the bur-

den of proof would have been on the appellee. That the appellant may not have insisted on this course being pursued is wholly immaterial, for the question here is one of power, and not of procedure, and in passing it may not be amiss to say that such an objection by him would, of itself, if sustained, have defeated his purpose in contesting the appellee's objections to the petition; for any trial thereof on their merits would have in all probability been necessarily still in progress when the day for the holding of the election at which the proposed statute was to be submitted arrived.

But my brethren say that no judgment could have been properly rendered permitting the secretary of state to proceed with the election, for the reason that the Initiative and Referendum Amendment to section 33 of the Constitution, which was submitted to and adopted by the qualified electors of the state, is void, because it violates section 273 of the Constitution, under which amendments thereto are submitted to the qualified electors for ratification, in that it contains "more than one amendment" to the Constitution.

In *State ex rel. Howie* v. *Brantley, State Game and Fish Commissioner,* 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723, this court passed upon this objection to the amendment, and after, as will appear from an examination into the history of that case, the most careful consideration decided that the amendment was not subject thereto, but is valid, and that Brantley, the state game and fish commissioner, had been legislated out of office by the adoption of a law by the qualified electors of the state under the provisions of the amendment. It is true that two of the judges then composing the court dissented from the conclusion reached in that case; nevertheless the question presented was as effectually decided as though all of the judges had concurred therein. I will not reproduce the reasoning by which the majority of the court supported its decision, but will simply again point out, as was there done, that a determination of the question will depend upon whether

a Constitution should be given a liberal or a strict and narrow construction.

Whether a Constitution should be construed in the one way or the other has been a much-mooted question in American political and judicial history, but the tendency of modern thought, both political and judicial, is that such an instrument should be liberally construed, to the end that the will of the people as therein expressed may be carried out. If the court in the Brantley case had adopted a strict and narrow construction, such as my brethren now adopt, the amendment would have been declared void, and Brantley would have remained in office. But it adopted, as it had the right to do, and which under the rule of *stare decisis* should be now followed, a liberal construction, under which the amendment was necessarily held to be valid. Whether a Constitution shall be liberally or strictly construed will depend upon the school of thought to which the person who is called on to construe it belongs, and all that can be said with reference to the correctness *vel non* upon the construction placed upon the amendment here in question in the Brantley case is that the court could have reached either conclusion as to the validity of the amendment; but it cannot be said that the decision is manifestly wrong—that is, that all men at first blush would so say— and as I understand the rule of *stare decisis* a court should adhere to a decision once made, when the questions therein involved afterwards arise, unless the decision is manifestly wrong, has not become fixed in the jurisprudence of the state, involves no rule of property, and is mischievous in its results.

The mischief which will result from following the decision in the Brantley case can only be that the people will have an opportunity to continue to exercise the right to initiate laws themselves and to pass upon those enacted by the legislature. Whether the existence of such a power is to be held as detrimental to the people depends upon what school of thought the person deciding the question

belongs; but, if it is, as to which I am not called on to express an opinion, it can be easily surrendered in another election, while, on the other hand, the confusion that will arise by overruling the Brantley case can probably not be remedied. As the matter now stands, no one can say with confidence whether the amendment is a part of the Constitution or not; for, unless the rule of *stare decisis* is to be followed, the decision here made may also be hereafter overruled.

If the present decision should be adhered to, the fish and game law, which was held in the Brantley case to have been repealed, is and has always been in full force and effect, in so far as the law by which it was said to have been repealed is concerned, and an amendment to section 206 of the Constitution, adopted under the amendment to section 33, after the Brantley case was decided, is void. Under this amendment to section 206 the legislature has appropriated and the administrative department of the state government has spent several millions of dollars, and what protection the statutes under which they acted will now afford these administrative officials may be a serious question.

The rule of *stare decisis* is probably that feature of the common law which differentiates it from other legal systems, and the growth and symmetry of that system was made possible only by the adherence of the courts to that rule, and this is peculiarly a case in which it should be followed.